Good morning. Tom Hartzell on behalf of Benjamin Lopez-Patino. And if I could reserve three minutes for rebuttal, Your Honors. We'll try to help you, but you also try to keep track of your own time. May it please the Court. The first issue I would like to address here is the sufficiency of the evidence in this case, taking it in a chronological order rather than in the order I put it down in the brief. The only evidence the government managed to admit, present in this case, that Benjamin Lopez-Patino was in fact an alien was his own admission in the jail to Agent McCarthy and an application for a Mexican passport that had been made in Los Angeles and granted in Los Angeles and also a visa to visit the United States. There was a deportation order as well, but I urge the Court not to put much weight on that, because it was obvious from the examination of Agent Lockwood that this was issued in absentia, that there is no proof whatsoever that Mr. Lopez-Patino had ever received a copy or that it had been read to him or that he had made any admissions under oath in front of an immigration judge. So based on this, the trial court denied the Rule 29 motion, and on cross-examination, Mr. Lopez-Patino advised the Court, testified that the only reason he had admitted to Agent McCarthy that he had been born in Mexico was because that's what Agent McCarthy said, the information that they had indicated. So we had only his own admission, a Mexican passport that was issued in Los Angeles, and an order of deportation that was issued in absentia to show alienage. And unlike the United States v. Hernandez case in which the defendant in that case hopped a fence, here everyone agreed that Mr. Lopez-Patino had entered through a port of entry, had shown identification and had gone back into the country, perhaps under the mistaken belief that he had permission to do so, which, of course, is not a defense. But there is no surreptitious entry into the United States. So there really wasn't anything to corroborate his admission that he was born in Mexico, other than a Mexican passport that was issued in Los Angeles by the Mexican consulate there. The next issue is whether or not – well, I guess I'm in the unusual position of arguing insufficient evidence, yet acceptance of responsibility at the same time. If the Court finds that there was sufficient evidence, I do believe that Lopez-Patino qualified for a three-level reduction for acceptance of responsibility under the sentencing guidelines. He never said he wasn't a Mexican citizen, that he wasn't an alien. He only said that all his memories were from the United States, that his first memories were in the United States, that the only reason he had to believe that he was a Mexican national was because the immigration office had told him. But he never denied that he had been deported. He never denied that he reentered without getting the express authority of the Attorney General. And he never denied that he was, in fact, a foreign national, but said that he felt that he was a national of the United States. It was interesting to me – Wasn't his – wasn't his visa from Mexico? It was issued by the American consulate in Tijuana subsequent to the issuance of the Mexican passport. What's his indicated nationality? Why did he need a visa to get from Mexico to the United States? Well, he was already in the United States when the visa was issued, based on the fact that the passport was actually issued in Los Angeles. And I think we could only speculate there'd be a number of reasons why someone who was in the United States would want a passport and a visa. Maybe his parents were from Mexico, they wanted to get him travel authorization. But it's clear that the visa was issued subsequent to his actually being in the United States. And I don't want to go too far into speculation as to why that happened. No, but the documentation was before the court. I beg your pardon? Wasn't the documentation before the court? Yes, and it also showed that that was the order. And it appeared to be reliable, genuine documentation, right? Both the passport, the Mexican passport and the United States visa appeared to be reliable, Your Honor, yes. Okay. Now, the sequencing, he had the passport before he came in, but the visa after? Is that what you're saying? No, he got both. Both were after he was actually in the United States. The passport was issued in Los Angeles, California. And the visa was subsequent to the issuance of the passport. So when he got the visa to come here, he had already been here. We don't know for how long he was a small child at that time, and his parents were unavailable to fill us in as to why it happened in this order. Was there any evidence as to how those documents came to be applied for? And none of the underlying applications were put in evidence, I take it? The INS file was put in evidence. It did have the visa application, which indicated that the passport had been issued prior to that in Los Angeles. Okay. Going to the acceptance, I believe that he qualified for that because he admitted the essential elements of the offense and sort of shrugged his shoulders and threw up his hands as to alienage. It was Mr. Lopez Coutinho's position, and as I made passing reference to in the brief, he was a difficult client who couldn't believe that he could be prosecuted for being in the country that he saw as his home. He believed that if all the facts were put before a jury, that a jury could not find him guilty of illegal reentry because all his memories were from here. I think probably the most essential and important issue we have before the Court, important to any alien who's convicted in Arizona of child abuse, is whether or not that's a crime of violence under Guideline Section 2L1.2. The statute itself that Mr. Lopez Coutinho pled guilty to didn't really require violence for one to be found guilty thereof. I don't think so. We have to look to what he said. In this case, we have to look to what he said at the plea. If it even qualifies for the Taylor categorical approach, then we can bring in those judicially cognizable documents. But I don't think that the statute on its face would qualify for Taylor. Well, but if the statute is too broad, and I think it is, then we look to other documents in the record to see if we can figure out what he did and if that's within the Federal definition, correct? Correct. So one of the things we can look at is the plea agreement, or rather the plea colloquy. And at the plea colloquy, he talks about bruises on the baby's bottom, child's bottom. Mr. Lopez Coutinho admitted that he was drunk and didn't remember, but he believed that he was asked by Miss Fahn, I forget, Pearl Fahn, to spank the baby, and that he did spank the baby. Now, he didn't say that at the plea. He maybe said that. The part of the plea that I remember is where he talks about there's bruising, right? He injured a child under 18 years old. What kind of injury occurred? She got some bruises on her behind, spanking, and that he was intoxicated. And the court – so that's the – The indictment also says that he pled to – that count one was intentionally or knowingly causing physical injury. And that's another document that we're, under the modified categorical approach, able to look at. You're able to – yeah, of course, but I don't think it has quite the force of his own admissions. No, I don't either. But we look at both of those in combination, so that puts context on the plea colloquy. One has to think of the broad application of this child abuse statute in Arizona. If you drink and have a child in your car, you can find yourself being prosecuted for this child abuse. If you leave the home and – Well, that's true, and that's why it's overbroad. It may be negligence. It may be failure to act. It may be mental illness, the results that's encompassed under the Arizona statute. But the question is whether, in this particular case, under the modified categorical approach, we look to the – and there's this sort of philosophical or abstract or abstruse notion. We can't look at the facts of the actual crime, but we can look at what he pled to. So here we're looking at what turns out to be the facts of the crime. And the facts of the crime are perhaps an overvigorous spanking. And whether an overvigorous spanking is a crime or not, it's not a crime. It's not a crime. It's not a crime. It's not a crime. It may be, but it was still – it was indicted as a Class 4 felon. And he pled guilty to a Class 4 felony. Yeah. But it's – what he pled guilty to is knowingly causing or permitting injury – Right. – not like – In your position, it's not very serious, so why is it a violent crime, a crime of violence? Well, based on some of the court's prior holdings, I don't think seriousness is really at issue here. I know you don't, but that's sort of the thrust of what's troubling you here, it seems. Well, it's that it was corporal punishment that was overly vigorous rather than – Yeah. – something just out of the blue where someone used violence against another. You know, your time's up, but we'll give you some time for rebuttal. But let's hear from the government, and then we'll hear from you, Gary. Yeah. May it please the Court, my name is Jeffrey Jacobson. I represent the United States in this case. The district court did not clearly err when found that the defendant did not qualify for a two-level reduction for acceptance of responsibility in this case. The court correctly concluded that the defendant's prior conviction for child abuse in Arizona was a crime of violence. It correctly found that there was sufficient evidence to deny the Rule 29 motion, and it also did not abuse its discretion in allowing the parties to brief the two issues – two of the issues before the court right now, acceptance of responsibility and whether or not the defendant's prior child abuse conviction qualifies as a crime of violence. I wanted to address one of the questions that was asked by Judge Fletcher. It is true, the statute – the crime of violence statute is overbroad, but under the modified categorical approach under this Court's holdings in Cerrone-Sanchez, the Arizona statute for injury – physical abuse is equated to injury. That's exactly what we have in this case. This case falls squarely within the Cerrone-Sanchez model for finding, under the modified categorical approach, that this is a crime of violence. If the Court has any specific questions for the United States, I'll be glad to answer them. How is it that, on the one hand, the government can argue that he isn't entitled to acceptance of responsibility, yet he fessed up right away to being an alien? Well, to qualify for acceptance of responsibility, the defendant must truthfully admit the conduct of the offense. He has to essentially give a forthright admission to each and every element of the offense. It appears that because the burden is on the defense in this case to show that he accepted responsibility, that essentially he was looking for jury nullification. He wants to argue that he was portraying – essentially, if you look at this, he's portraying an image for the jury. Sure, I was – yes, I am a Mexican citizen, but I consider myself a national. I only came back into the United States because INS told me I could. He denied the lawfulness of his prior deportation by saying that the agent that took his initial statement manipulated the questions and answers. So he's sort of playing both sides against the middle. Well, I understand his theory, and maybe it would be helpful if you focused on that. His theory, as we've heard today again, is that he threw up his hand. He said, I can't believe. Yes, that's what it says, and so if that's what the law deems to be, Mexican citizen, so be it. But I don't think I am, and therefore that's what I'm trying to present to you. Well, that may have been his theory, but as the district court noted, and the district court's ruling on the acceptance responsibility under the Scrivener case is given great deference, and the district court went back through its notes, which were typewritten, it reviewed the transcript, and it found essentially that the defendant thinks of himself as a national. He admitted to the November 1994 deport. He admitted his handwriting and fingerprints were on the warrant of deportation. He admitted that he entered the United States through a port of entry in November 1994, and he admitted that he answered Agent McCarthy's answers truthfully and the information was correct. Essentially, he's admitting the actus reus, but throwing in a mens rea, and really that the mens rea, the subjective element, is exactly what the Sotelo case says you can't rely upon, at least in terms of the Sotelo case. Let me ask you this. Is it the government's position that any time somebody goes to trial and makes the government prove it, that he's ineligible for acceptance of responsibility? No, that's not the government's position. So what did he do beyond saying prove it? What did the government do beyond saying? What did the defendant do here beyond saying to the government, you know what, you've got to prove this, which he clearly did, and the government tried to do that, but you're telling me that that by itself does not disqualify him for acceptance of responsibility. I understand where the court is going. There's a difference between what the United States has to prove, that the defendant is an alien, that he was deported from the United States, and that he illegally reentered without permission from the United States government. That's what the United States has to prove beyond a reasonable doubt. The defendant has something different to show with the acceptance of responsibility. The burden is on the defendant to show that he accepted responsibility. The district court noted that it has found in certain circumstances that a defendant can go to trial, can preserve certain issues as listed in the application. The reason I'm asking the question is that the district judge, in denying acceptance of responsibility, says you resisted the government every step of the way. You made them prove every bit of this. But I think I just heard you say, well, that's not a sufficient ground for denying acceptance of responsibility. Alone, and the application, though, is very clear. In rare circumstances, a defendant can put the government to its burden at trial and still accept responsibility, show genuine contrition, where he's trying to preserve an argument that the statute doesn't fit the facts or the statute is constitutionally vague or overbroad. That's not the situation here. The situation is here that the defendant is the one that wants it both ways. He wants to be able to say that the United States didn't prove it beyond a reasonable doubt, but we've accepted responsibility for each and every element of the crime and did so with a forthright admission. Is your argument that if you go to trial and get found guilty, you may nonetheless get credit for acceptance of responsibility if you say and convince the district judge, you know, I really did something wrong. I profoundly regret it. I'm sorry. Before you and all other witnesses, I accept responsibility. That's okay. That does it. If the district court finds that that is one of those rare circumstances where the defendant is showing genuine contrition for his acts and admitting each and every element, I think that's perfectly within the crime. In this case, the district judge, in your view, is justified in denying acceptance of responsibility because this young man says, and I'll take it at face value, he says, well, I don't think it was wrong. I think, in my heart, I'm an American. Exactly. And that per se then disqualifies him for acceptance of responsibility. Well, because one of the elements is the defendant is an alien, which means he's either a citizen or a national. If he's saying that I'm a national, that I pledge allegiance essentially to the United States, in the Sotelo case he's right on point on this. He says a person's subjective, a person, a legal entrant who subjectively considers himself a national, right there disqualifies him because he is disputing the alienage element. If there are no further questions from the court, I'll take my seat. Thank you. Thank you for your argument. You're taking your time, but if you'd like a minute for rebuttal, it's all yours. Yes, thank you. Jury nullification isn't a defense. Lopez-Martinez didn't put on a defense. He had a constitutional right to trial. He said, let me put my facts out there for the jury. Let the people of the District of Arizona hear what I have to say. But he didn't challenge, you know, the government's proof other than the admissibility of it and what it might mean. Also, the one thing that Mr. Jacobson. But then he is contesting the factual, the fundamental factual basis. Well, subjective belief is no defense to a 1326 allegation. Good faith here isn't a defense. I mean, he's saying that he moved for a Rule 29 judgment of acquittal. In the brief, we're saying, well, you know, maybe this evidence wasn't enough. But he's not saying it's not so. He's just saying, have they proved it? And so I think that's a very important distinction. And one thing that Mr. Jacobson touched on that I want to comment on briefly in closing was the last-minute continuance of the sentencing. The first pre-sentence report had this as a Level 16 offense with acceptance. And the AUSA at the time, Maria Davila, indicated they were ready to proceed to sentencing and then backpedaled at the last minute, asked the Court to continue it. Isn't this a matter of discretion with the trial court? It is a matter of discretion. Do you think the trial court abused this discretion? I do. That's a pretty tough standard. There are no objections filed to the pre-sentence report. The government indicated it was ready to proceed. It was only after the trial court raised the issue of whether or not Lopez Patino qualified for acceptance that, in fact, Ms. Davila stood up and says, well, you know, we really need to brief this and some other issues there. Let's continue this. And I think that was an abuse of discretion there. Okay. Thank you. Thank you both for your helpful arguments. The case of United States v. Lopez Patino is now submitted for decision. The next case on our argument calendar is United States v. Contreras-Salas.
judges: Beezer, W. Fletcher, Fisher